FILED & JUDGMENT ENTERED
David E. Weich

Sep 24 2009

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 08-32502 |
| **JEANNETTE MARIA PRESTON** ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| _____) | |

## ORDER

This matter is before the Court upon: (1) Objection to Exemptions and (2) Motion for Turnover filed by the Chapter 7 Trustee, R. Keith Johnson ("Trustee"). Debtor Jeannette Preston ("Preston") has responded to each motion and sought leave to amend her original claim of exemptions.

After an evidentiary hearing held February 26, 2009, the parties requested deferral of this ruling to pursue settlement. After several status hearings, on August 13, 2009 the parties advised the Court that they were unable to reach an agreement. The undersigned will now rule on the two motions.

1

First, the Trustee objects to Preston's attempt to use the federal tenancy by the entireties exemption, 11 U.S.C. § 522 (b)(3)(B)(2007), to exclude her townhouse from the bankruptcy estate. Preston scheduled the townhouse in her petition as being held by tenancy by the entireties. However, after bankruptcy, the Trustee ascertained that the property is actually titled in Preston's name, making section 522(b)(3)(B) inapplicable.

Preston agrees with the Trustee's assessment, but says she misremembered the record status of the property. She now asks permission to amend her exemptions and claim up to $18,500 of the equity in the townhouse under the North Carolina State residential exemption, N.C. Gen. Stat. § 1C-1601(a)(1)(2005). That failing, Preston would like to claim up to $5,000 of the net proceeds from the property[1] under the N.C. Gen. Stat. § 1C-1601(a)(2) "wild card" exemption. The Trustee objects to the former amendment, but not the latter. The issues in this motion are whether the townhouse qualified as a "residence" at the petition date and whether Preston's estranged husband was her "dependent."

---

[1] The Trustee is currently marketing the property for sale.

2

In the second motion, the Trustee seeks turnover of the scheduled petition date balances from Preston's three demand deposit accounts. These were scheduled as follows:

(1) Wachovia checking account ($550);
(2) Wachovia Savings account ($500); and
(3) Union Bank of California checking account ($6,000).

Preston has not attempted to exempt these monies, but nevertheless resists the Trustee's demand for their turnover. Preston says she also erroneously scheduled this asset by overstating the Union Bank account balance. The issue at hearing was the account balance at the petition date, and whether a travel expense advance should be included in the estate.

**STATEMENT OF FACTS**

Preston filed a Chapter 7 bankruptcy case in this Court on November 18, 2009.

Prior to bankruptcy, the Debtor was employed as a real estate agent. Preston's estranged husband, Daniel, was a minor league ice hockey player. Preston's annual income was consistently greater than Daniel's: $150,000-$200,000 as opposed to $35,000-$50,000. Daniel is a Canadian citizen who during marriage sought to become a citizen of the United States. Preston served as Daniel's sponsor.

3

As of the bankruptcy date, Preston held ownership interests in two residential properties: (1) a Waxhaw, N.C. residence (tenancy by the entireties) and (2) an individually owned Charlotte, N.C. townhouse.

Preston and Daniel split up several months before Preston filed bankruptcy. Theirs was a de facto, if not a formal, split. Neither party filed for divorce or equitable distribution (property settlement). Practically, however, the parties ended their marriage. They divided their personal property. They separated their finances and began to support themselves independently of one another.

From separation until the bankruptcy date, Preston resided in the Waxhaw residence.[2] Daniel initially lived in the townhouse. However, a few weeks before Preston's bankruptcy, Daniel moved out in order that the townhouse could be rented to a friend. At the filing date, neither Preston nor Daniel resided in the townhouse.

As to her erroneous listing of title to the townhouse in her bankruptcy schedules, Preston testified that she was unaware that this property was individually owned. Given the Debtor's employment as a real estate agent, her

---

[2] There was no equity in this residence, such that relief from stay was granted to the lender without objection on December 31, 2008.

4

statement might be doubted. However, the evidentiary record is insufficient to refute her statement.

As to the equally erroneous Union bank account balance, Preston testified that shortly before the petition date she accepted a new job in California. To induce Preston to take the job, her new employer agreed to pay her $5,000 in advance of the move to cover her moving expenses. Preston testified that she thought the advance would be received before the petition date and so she included this sum in the Union Bank account balance found in Schedule B. As it turns out, this sum was received one day after bankruptcy. The actual account balance on the petition date was only $1,837.59.

## DISCUSSION

**I. Exemptions/Motion to Amend Exemptions.**

North Carolina has opted out of the Federal exemptions making the State's exemptions applicable to bankruptcy debtors. 11 U.S.C. § 522(g)(1); N.C. Gen. Stat. §1 C-1601(f).

N.C. Gen. Stat. § 1C-1601(a)(1) provides in relevant part that a debtor may retain free of the claims of creditors:

5

> (1) The debtor's aggregate interest, not to exceed eighteen thousand five hundred dollars ($18,500) in value, in real property… that the debtor or a dependent of the debtor uses as a residence,…

Since the statute is written in the present tense ("uses"), it is clear that only property being used at the petition date as a residence is subject to the exemption. *In re* Cain, 235 B.R. 812, 816 (Bankr. M.D. N.C. 1998).

Preston's proposed exemption in the townhouse fails for two reasons. First, on the date of bankruptcy neither Preston nor her estranged husband were residing in the townhouse. Preston had never lived there. Daniel did at one point, but moved out and the property was rented on the petition date. As a rental property, the townhouse is ineligible for exemption under N.C. Gen. Stat. § 1C-1601(a)(1).

Second, on the facts presented, Preston's estranged husband, Daniel, cannot be considered her "dependent" on the filing date, within the meaning of the statute.

Section 1C-1601(a)(1) does not define the term "dependent." However, in the domestic area, the North Carolina Court of Appeals has defined "dependent spouse" as "a spouse, whether husband or wife, who is *actually substantially* dependent upon the other spouse for his or her maintenance and support or is substantially in need of

6

maintenance and support from the other spouse." *Vandiver v. Vandiver*, 274 S.E.2d 243, 250 (N.C. Ct. App. 1981).

This comports with the definition of the term "dependent" found in Black's Law Dictionary. According to Black's, a dependent is "[o]ne who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else." Black's Law Dictionary, 449 (7th ed. 1999).

Under either definition, Daniel fails to qualify as Preston's dependent.

This couple ended their relationship well before Preston filed bankruptcy. They physically separated, divided their belongings and thereafter lived apart. They resided in different residences and in different municipalities. And if this were not enough physical separation, as of the filing date, Preston was in the middle of moving to California.

Both definitions of "dependent" use language describing situations of actual, rather than potential legal, dependency: "substantially in need of maintenance and support" or being "unable to exist or sustain oneself" without aid. *Vandiver*, 274 S.E.2d at 250; Black's Law Dictionary, 449.

7

On this record, we cannot find Daniel to be such a dependent. He was clearly subsisting without Preston's support at the petition date.

Not only was Preston not voluntarily providing support to Daniel at this point in time, she was keeping her money out of joint bank accounts so that he could not access any supportive monies. Preston had been careful since the breakup to keep her earnings and assets out of Daniel's reach. For example, when the new employer's travel advance was wired into the Union Bank account (a preexisting **joint** bank account), Preston immediately wired the money into another individual account lest, the money fall within Daniel's reach.

It is true as Preston suggests that neither party had filed for divorce at the petition date, but this does not change our result. Had either party filed for divorce and sought a separation order or reached a voluntary separation agreement, Preston may have been required to pay support to Daniel as her dependant. They did not, however, and we cannot know the outcome.

What we do know is that instead the parties agreed to a division of their property and a de facto separation then each struck out on his or her own. Preston was not, after their split, actually supporting Daniel, and no court order

8

required her to do so. As a result, we cannot find on these facts that Daniel was "actually and substantially dependent" or otherwise reliant upon Preston.

Finally, Preston has suggested that her sponsorship of Daniel's naturalization request has some bearing on the dependency issue. However, she provided no rationale and no legal authority to support that position. On the limited facts presented, the undersigned can discern no reason why Daniel's citizenship status would have any bearing on this dispute.

For all of these reasons, Daniel is simply not a "dependent" of Preston's within the meaning of § 1C-1601(a)(1) at the bankruptcy date. Accordingly, Preston is limited to a $5,000 "wildcard" exemption (§ 1C-1601(a)(1)) in the property.[3]

**II. The Turnover Motion.**

In his second motion under 11 U.S.C. § 542 (1994),[4] the Trustee seeks turn over of the petition date balances in Preston's three bank accounts. Based upon the evidentiary record, it does appear that the actual balances at the petition date were as Preston testified: (1) Wachovia

---

[3] In lieu of the residential real estate exemption, this statutory provision permits Preston to claim up to $5,000 in value in any property she owns. N.C. Gen. Stat. § 1C-1601(a)(2).

[4] This Code provision requires a party in possession of bankruptcy estate property to turn over the same to the Trustee.

9

checking account ($550); Wachovia Savings account ($500); and a Union Bank of California checking account ($1,837.59), for a total of $2,887.59.

The fight is really about whether the $5,000 travel advance received a day after bankruptcy should be included in the estate. The undersigned thinks it should not.

A Chapter 7 debtor's bankruptcy estate includes all of a debtor's property as of the case commencement date. 11 § U.S.C. 541(a) (2007). "[P]roperty" in this context is broadly defined to include all legal and equitable interests. *Id*. However, where the debtor holds bare legal title, as opposed to, equitable ownership, only this limited interest enters the estate to this extent. 11 § U.S.C. 541(d).

The $5,000 travel advance should not be considered bankruptcy estate property under 11 U.S.C. 541. These monies were received by Preston postpetition, making them non-estate property.

Even if they were not received postpetition, however, these monies were given over by Preston's employer for a specific purpose (paying) her travel expenses and upon a conditional basis (that she move to California and take the job). These funds were either the employer's property or at worst, earmarked property meaning property in which the

10

debtor had only bare legal title. The Court will not require the turnover of such funds.

However, as to the $2,887.59, Preston has not exempted these funds in her three (3) bank accounts. Accordingly, she must turn over the same to the Trustee.

IT IS THEREFORE ORDERED:

1. The Trustee's Objections to Exemptions are **SUSTAINED**.

2. Preston's Motion to Amend her Exemptions is **DENIED** as to the residential exemption, N.C. Gen. Stat. § 1C-1601(a)(1), but **ALLOWED** as to the N.C. Gen. Stat. § 1C-1601(a)(2) "wildcard" exemption to the extent of $5,000 of any equity realized by the Trustee in the townhouse.

3. The Trustee's Motion for Turnover is **GRANTED** to the extent of $2,887.59. Preston is directed to pay this sum over to the Trustee within fifteen (15) days of entry of this Order.

**This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.**     **United States Bankruptcy Court**